UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**NEW ORLEANS CITY**  **CIVIL ACTION**

**VERSUS**  **No. 25-1366**

**FREDERICK NERONI, ET AL.**  **SECTION I**

## ORDER & REASONS

Before the Court is an administrative adjudication removed from the Administrative Hearing Department of the Code Enforcement Division of the City of New Orleans ("CED") to the United States District Court for the Eastern District of Louisiana by defendants Frederick Neroni ("Frederick") and Tatiana Neroni ("Tatiana") (collectively, "defendants").[1] Defendants, after filing their notice of removal, also filed an answer and counterclaims[2] against plaintiff New Orleans City ("New Orleans"), alleging numerous federal statutory and constitutional claims. Because a party cannot answer their own filing, the Court construes defendants' filings as supplemental briefings relating to the notice of removal. For the reasons stated herein, the removal was improper.

Defendants have moved[3] for a declaratory judgment finding that any "post-removal state proceedings" in this action "are void as a matter of law," a permanent injunction against New Orleans "barring enforcement of any adverse determinations

---

[1] R. Doc. No. 1.
[2] R. Doc. No. 2; R. Doc. No. 4.
[3] R. Doc. No. 8.

in any post-removal state proceedings," an order requiring New Orleans to remove any publication relating to the administrative proceeding, and judicial disqualification pursuant to 28 U.S.C. § 155 and 28 U.S.C. § 455.

## I. BACKGROUND

On June 10, 2025, New Orleans commenced administrative adjudicative proceedings against defendants, alleging twenty-four violations of the Code of the City of New Orleans (the "Code") in relation to defendants' property at 116 Huntlee Drive in New Orleans, La. (the "property").[4] According to defendants, New Orleans seeks to impose numerous fines and damages upon defendants, and if the violations are proven, defendants would be required to undertake a major reconstruction of the property within thirty days—a practical impossibility.[5]

Defendants filed a notice[6] of removal on July 2, 2025, asserting that this Court had subject matter jurisdiction over this action on the basis of diversity jurisdiction.[7] Both defendants are domiciled in South Carolina.[8]

Defendants each subsequently filed an answer to the notice of removal and six counterclaims against New Orleans.[9] Defendants' first counterclaim alleges that New Orleans unlawfully entered the property for an inspection, which defendants allege is an unconstitutional search. Defendants seek relief for that claim pursuant to 42

---

[4] R. Doc. No. 1 ¶¶ 1, 16.
[5] *Id.* ¶ 13.
[6] *Id.*
[7] *Id.* ¶¶ 21, 23.
[8] *Id.* ¶ 22.
[9] *Id.*; R. Doc. No. 4.

2

U.S.C. § 1983 and state trespass law.[10] Defendants' second counterclaim alleges abuse of process, which defendants say is based on state law, an unspecified 42 U.S.C. § 1983 claim, and an unspecified 42 U.S.C. § 1985 claim.[11] This second counterclaim is based on defendants' allegation that New Orleans, along with "individuals [New Orleans] associate[d] with," fabricated the administrative proceedings against defendants to induce defendants to sell the property for a below-market rate.[12] In their third counterclaim, defendants allege violations of their procedural and substantive due process rights based on the allegation that New Orleans established the CED and, therefore, exerts undue influence on the CED's administrative proceedings.[13] The fourth counterclaim alleges that the proceedings against defendants have reduced the market value of their property such that a taking has occurred in violation of the Takings Clause of the Fifth Amendment.[14] The fifth counterclaim asserts that New Orleans violated due process and state law by filing and serving the adjudicative proceeding with a document that was not signed by counsel, as required by Louisiana law and due process.[15] Finally, in their sixth counterclaim, defendants assert that the fines New Orleans is authorized by the Code to levy against them, should the administrative hearing result in a ruling adverse to

---

[10] R. Doc. No. 2 ¶¶ 32–48.
[11] *Id.* ¶¶ 49–61.
[12] *Id.*
[13] *Id.* ¶¶ 62–77.
[14] *Id.* ¶¶ 78–85.
[15] *Id.* ¶¶ 86–93.

defendants, would violate the Excessive Fines Clause of the Eighth Amendment.[16] New Orleans has not made any filings since the case was removed to this Court.

On September 30, 2025 the Court issued an order[17] to show cause why plaintiffs' claims should not be dismissed for improper service of process and mootness. On October 10, 2025 defendants filed a motion for a declaratory judgment arguing that all post-removal administrative proceedings are null and void, that this Court should issue an injunction barring New Orleans from enforcing any judgment or publishing any publicly available information relating to any post-removal administrative proceedings, and that this Court should be disqualified pursuant to 28 U.S.C. § 155 and 28 U.S.C. § 455. However, because the motion was filed after the close of business on Friday, October 10, 2025 the motion was not placed on the docket sheet for this action until Tuesday, October 14, 2025[18]—some time after the show cause hearing. Unaware of defendants' undocketed motion, the Court held the show cause hearing on October 14, 2025 at 9 a.m.[19] Defendants did not appear at the hearing.

## II. STANDARD OF LAW

### a. Subject Matter Jurisdiction

Subject matter jurisdiction is a non-waivable requirement that delineates the power of federal courts. *McDonal v. Abbott Lab'ys*, 408 F.3d 177, 182 (5th Cir. 2005)

---

[16] *Id.* ¶¶ 94–101.
[17] R. Doc. No. 7.
[18] The motion was not placed on the docket sheet on Monday, October 13, 2025 due to the observance of a federal holiday.
[19] *Id.*

4

(quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

A district court can properly exercise subject matter jurisdiction over a claim in federal court either when that case was originally brought in federal court through original jurisdiction, or when a state action has been removed to federal court through removal jurisdiction. *See, e.g.*, *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293–96 (5th Cir. 2010); 28 U.S.C. §§ 1331, 1332, 1441. However, for a district court to properly exercise removal jurisdiction, it must have been able to assert original jurisdiction over the case as well. *Halmekangas*, 603 F.3d, at 293; 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.")

Pursuant to 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, § 1367 only grants supplemental jurisdiction over state claims when original jurisdiction has already been established

5

by diversity or federal question jurisdiction. *Halmekangas*, 603 F.3d, at 294; *see also id.* at 294–95 ("The supplemental jurisdiction statute is not a source of original subject-matter jurisdiction, and a removal petition therefore may not base subject-matter jurisdiction on the supplemental-jurisdiction statute, even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction, and even if removal would be efficient.") (quoting *Ahearn v. Charter Twp. Of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996)). This means that while in some instances § 1367 permits a district court to hear claims over which it would not otherwise have jurisdiction, supplemental jurisdiction itself does not provide a basis for the district court to exercise subject matter jurisdiction over the original claim. *Id.*

A district court must have original jurisdiction over an action either through diversity jurisdiction or federal question jurisdiction. *Halmekangas*, 603 F.2d at 293 (finding when "the plaintiff files an action in state court with no federal question or complete diversity, the original jurisdiction necessary for removal under § 1441 does not exist"); *see also id.* ("Original jurisdiction, in non-maritime claims, lies where the conditions of 28 U.S.C. § 1331 [federal question] or 1332 [diversity] are satisfied.") (alterations in original) (internal quotation marks omitted) (quoting *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995)).

Courts can assert federal question jurisdiction when the claim "arises under the Constitution, laws, or treaties of the United States." *Mitchell v. Clinkscales*, 253 F. App'x 339, 340 (5th Cir. 2007); 28 U.S.C. § 1331 ("The district courts shall have

6

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). "Federal jurisdiction exists when a federal question is presented on the face of a plaintiff's properly pleaded complaint." *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 924 (5th Cir. 1997); *Renegade Swish, LLC v. Wright*, 857 F.3d 692, 697 (5th Cir. 2017) ("[T]he well-pleaded complaint rule also governs whether a case is removable from state to federal court pursuant to 28 U.S.C. § 1441(a).") "The existence of a defense based upon federal law is insufficient to support jurisdiction." *Renegade Swish,* 857 F.3d, at 697. It is well-settled that "federal question jurisdiction depends on the contents of a well-pleaded complaint, and may not be predicated on counterclaims." *Id.* (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)); *see also Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 326–27 (5th Cir. 1998) ("When an action is brought to federal court through the § 1441 mechanism, for both removal and original jurisdiction, the federal question must be presented by plaintiff's complaint as it stands at the time the petition for removal is filed and the case seeks entry into the federal system. It is insufficient that a federal question has been raised as a matter of defense or as a counterclaim."); 28 U.S.C. § 1441(a) (requiring original jurisdiction for an action to be removed to federal court).

Federal courts have subject matter jurisdiction based on diversity when "the matter in controversy exceeds the sum or value of $75,000 [exclusive of interest and costs] and is between: (1) citizens of different States; or (2) citizens of a State and citizens of a foreign [S]tate." *Dos Santos*, 516 F. App'x, at 402. "A party must allege 'complete diversity,' which means that 'all persons on one side of the controversy

7

[must] be citizens of different states than all persons on the other side.'" *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 281 (5th Cir. 2020) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). A person is a citizen of a state for diversity purposes if he is domiciled within that state and is a citizen of the United States. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). A corporate entity is a citizen of its state of incorporation and its principal place of business. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 920 (5th Cir. 2001).

"[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). This differs from the power a court possesses to consider improper bases for removal that are not based on a lack of subject matter jurisdiction, which cannot be considered *sua sponte*. *Ziegler v. Champion Mortg. Co.*, 913 F.2d 228, 230 (5th Cir. 1990) ("Procedurally, a court may consider remand only if the parties raise the issue; conversely, a court may consider the existence of subject matter jurisdiction on its own motion."). When deciding a question of subject matter jurisdiction, the burden of proof is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (holding that the "party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000").

If a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g., Hitt v. City of Pasadena*,

561 F.2d 606, 608 (5th Cir. 1977). In the case of a *pro se* plaintiff, courts "hold *pro se* plaintiffs to a more lenient standard than lawyers when analyzing complaints." *Chhim v. Univ. of Tex. At Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

### b. Judicial Disqualification

#### 1. 28 U.S.C. § 155

Title 28 United States Code Section 155, cited by defendants, governs the temporary transfer of bankruptcy judges. Section 155(a) states that "[a] bankruptcy judge may be transferred to serve temporarily as a bankruptcy judge in any judicial district other than the judicial district for which such bankruptcy judge was appointed upon the approval of the judicial council of each of the circuits involved." § 155(b) allows for a retired bankruptcy judge to be recalled to serve as a bankruptcy judge in any judicial district by the judicial council of the circuit where such judicial district is located.

#### 2. 28 U.S.C. § 455

Title 28, U.S.C. § 455(a) of the U.S. Code provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The "purpose of § 455(a) is not just to prevent actual partiality, but to avoid even the appearance of partiality." *Republic of Pan. v. American Tobacco Co. Inc.*, 217 F.3d 343, 346 (5th Cir. 2000) (citation modified).

Subsection (b)(1) provides that a judge "shall also disqualify himself" when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed

9

evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Subsections (a) and (b)(1) "afford separate, though overlapping, grounds for recusal." *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003).

Both subsections require the court to evaluate three factors in making its decision: (1) whether the bias is based on extrajudicial or intrajudicial sources; (2) whether the specific facts shown in the motion would cause an objective observer to harbor doubts regarding the judge's impartiality; and (3) the timeliness of the party's motion. *Id.*; *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003).

First, the Court should consider "whether the alleged bias 'was of extrajudicial origin,' that is, whether it was based on events or information outside the judicial proceedings." *Andrade*, 338 F.3d at 455. Alleged bias arising from an intrajudicial source requires recusal only if there is a "display [of] deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *United States v. Brocato*, 4 F.4th 296, 302 (5th Cir. 2021) (per curiam).

Second, a motion brought pursuant to any subsection of § 455 must state specific facts such that a reasonable observer, knowing all the circumstances, would "harbor doubts about the judge's impartiality." *Travelers Ins. Co. v. Liljeberg Enterprises*, 38 F.3d 1404, 1408 (5th Cir. 1994). "The decision to recuse is committed to the sound discretion of the district court." *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997). Additionally, the recusal inquiry "ask[s] how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive,

cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (citation modified); *accord Andrade*, 338 F.3d at 454–55.

Third, "[s]ection 455 also obligates a party to raise the disqualification argument at a reasonable time in the litigation." *United States v. Anderson*, 160 F.3d 231, 234 (5th Cir. 1998) (citation omitted). The party seeking "'disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis of such disqualification.'" *Id.* (quoting *Travelers Ins. Co.*, 38 F.3d at 1410).

### III. ANALYSIS

#### a. Subject Matter Jurisdiction

This Court finds that it cannot exercise removal jurisdiction over the administrative proceeding because it is not a "state court" as required for the exercise of removal jurisdiction in 28 U.S.C. § 1441. While the Fifth Circuit has not addressed the question of whether administrative proceedings can qualify as "state courts" for the purpose of removal jurisdiction, other U.S. Circuit Courts of Appeal have done so. *See, e.g.*, *Or. Bureau of Lab. & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*, 288 F.3d 414 (9th Cir. 2002). Those circuit courts that have addressed this issue take two different approaches when answering this question, known as the "literal test" and the "functional test." *Wilson v. Gottlieb*, 821 F.Supp.2d 778, 783 (D. Md. 2011) (comparing the different approaches taken by different circuit courts to resolve the question of whether an administrative proceeding can qualify a state court pursuant to § 1441). The literal test looks to the plain language of § 1441 and finds that administrative proceedings are not state courts for the purposes of removal

11

jurisdiction, while the functional test looks to see whether the administrative proceeding is a "functional equivalent" of a state court, and if so, allows for the administrative proceeding to be removed to federal court. *Id.*

This Court finds the literal test to be the correct approach. "[W]hen the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language." *Dunn-McCampbell Royalty Int. v. Nat'l Park Serv.*, 630 F.3d 431, 438 (5th Cir. 2010). To expand the language of "state court" in § 1441 to encompass administrative proceedings such as the one defendants attempt to remove here would expand the removal jurisdiction of the districts courts beyond that which Congress clearly described in § 1441. *U.S. W. Commc'ns, Inc.*, 288 F.3d at 419. To assert jurisdiction in this case would be tantamount to replacing the words "state court" in § 1441 with words such as "'any tribunal that acts as a court' or 'any tribunal having court-like functions.'" *Id.* This Court declines to rewrite Congress's clear language, particularly when, because federal courts are courts of limited jurisdiction, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (quoting *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

Alternatively, even if this Court were to adopt the functional test, defendants have not met their burden of showing that the CED administrative proceedings are the functional equivalent of a state court. Defendants, as the parties claiming

12

jurisdiction, have the burden to show that federal jurisdiction exists and that removal is proper. *Id.* However, even liberally construing defendants' *pro se* notice of removal, they have failed to make sufficient factual allegations or provide support for an argument that the CED administrative proceedings function in a fashion equivalent to a state court[20]—such as the ability to exercise subpoena power. Courts that have used the functional test have found the ability to exercise subpoena power to be important when determining whether an administrative proceeding is functionally equivalent to a state court. *See Gottlieb v. Lincoln Nat'l Life Ins. Co.*, 388 F.Supp.2d 574, 580 (D. Md. 2005). This Court cannot properly assert removal jurisdiction over the administrative hearing.[21]

### b. Judicial Disqualification

#### 1. 28 U.S.C. § 155

28 U.S.C. § 155 is inapplicable in this case. § 155 concerns the transfer of bankruptcy judges and makes no mention of judicial disqualification. This Court cannot grant a motion for judicial disqualification pursuant to § 155.

#### 2. 28 U.S.C. § 455

Defendants argue that disqualification pursuant to 28 U.S.C. § 455 is proper because the Court raised *sua sponte* the issues of improper service of process and mootness, and because the Court scheduled a show cause hearing which defendants

---

[20] R. Doc. No. 1.
[21] While this Court initially thought that this action could potentially be dismissed as moot and for improper service of process, upon further reflection, the Court is of the opinion that this case is more properly dismissed for lack of subject matter jurisdiction.

were unable to attend because their disabilities prevented them from traveling to the hearing and defendants were unaware of the hearing until October 10, 2025.[22]

First, this Court was *obligated* to raise the issues of mootness and improper service *sua sponte*. Fed. R. Civ. P. 4(m); *Golden*, 166 F.3d at 717–19. In doing so, this Court was not demonstrating bias or prejudice toward any party in this action, but rather, it was acting in accord with duly enacted and well-settled federal law. *See, e.g.*, Fed. R. Civ. P. 4(m); *Golden*, 166 F.3d at 717–19. The Court raising improper service of process and mootness *sua sponte* would not cause a reasonable observer, knowing all of the circumstances, to harbor doubts as to the Court's impartiality.

Second, while this Court understands that defendants were unaware of the show cause hearing before October 10, 2025, and that defendants were unable to travel because of disabilities, this Court had no knowledge of that fact prior to the October 14, 2025 show cause hearing. While defendants had previously mentioned disabilities in prior filings[23] with this Court, they made no mention that their disabilities would impact their ability to appear in person for a hearing if required to do so. This Court was unaware of the inability of defendants to travel until receiving their most recent motion which, as discussed previously, was not available to the Court until after the show cause hearing. Regardless, this Court does not consider defendants' inability to attend the show cause hearing in connection with the resolution of this motion.

---

[22] R. Doc. No. 8-1.
[23] R. Doc. No. 5.

14

Additionally, this Court could not predict that defendant Frederick Neroni,[24] who in his own words "purchas[es] the docket report of the court from pacer.gov from time to time, to keep [him]self current of the filings in the case," would not check the September 30, 2025 docket entry of the order to show cause until October 10, 2025 when defendant reviewed the docket sheet. The order setting this case for the October 14, 2025 hearing was issued with two weeks' notice,[25] sufficient to provide defendants with adequate notice of the hearing. *See, e.g.*, *Gohe v. Seven Eleven*, 2006 WL 1152682 at *1 (N.D. Tex. April 10, 2006) (finding that two weeks' notice for a show cause hearing was sufficient notice to plaintiff such that their presence at the hearing was required).

A reasonable observer would not harbor doubts as to the Court's impartiality. Defendants have also not demonstrated any bias of this Court toward defendants which would warrant recusal. The defendants' motion for judicial disqualification pursuant to 28 U.S.C. § 455 must be denied.

Accordingly, for the reasons assigned,

**IT IS ORDERED** that the above-captioned case is hereby **DISMISSED WITHOUT PREJUDICE**.

---

[24] Defendant Frederick Neroni states, in his declaration attached to the defendants' motion for recusal, that he purchases docket reports from the court's electronic filing system to keep himself up to date on the case. R. Doc. No 8-4 ¶ 2. Defendant Tatiana Neroni does not mention purchasing docket reports in her declaration. R. Doc. No. 8-5.

[25] R. Doc. No. 7.

**IT IS FURTHER ORDERED** that defendants' motion[26] for judicial disqualification is **DENIED**.

New Orleans, Louisiana, October 20, 2025.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[26] R. Doc. No. 8.